Case 14-5169, Anteneh Abtew Appellant, the United States Department of Homeland Security. Mr. Cleveland for the appellant and Mr. Mayer for the affilee. Good afternoon. Good afternoon. May it please the court, my name is David Cleveland, counsel for the appellant. I'd like to reserve... I'd like to reserve four minutes of time for rebuttal. This case is about an agency that wants to ambush and asylum applicants with double hearsay documents. Well that may not be your strongest argument, given that the other statute says it must have a reasonable time. Indeed, your honor, with that as the background, we are talking about asylum. We would also like to talk about the inconsistencies of the agency. In the past, the DHS has disclosed asylum, has disclosed assessments. Does that matter though? Pardon me? Does it matter what it has done in the past, in this particular case, or whether it's pre-decisional and deliberative? It gives us information about the strength of their arguments. They disclosed them in the past, and now they say we don't want to disclose them for some reason. What is that reason? Why didn't that reason operate before when they were disclosing them all over the place? It's evidence that the reason they're giving is not a real reason. It is something that they pulled out of case law to avoid the assessments. It seems to me that maybe this is confusing or conflating two different issues. One is whether this is pre-decisional and deliberative, and thus covered under Exemption 5. And the second is whether the agency has to disclose the evidence at the ultimate hearing or provide reasons for its decision, which strike me as separate issues than the FOIA issue. And certainly under the statute, when you get to the Immigration Court, it does have to disclose the evidence it's using against you. There is a conflation. That's true, Your Honor, but they operate together. There's some confusion about when does the reasonable opportunity arise? Eight United States go to 1229. A says the alien shell had a reasonable opportunity to examine the evidence. When does that begin? The district court judge erred by saying that gives you, the applicant, no rights in the abstract. It only is triggered when the evidence is actually introduced into evidence. That's what she says, I think, at footnote 12. DHS disagrees with that, and they say, oh, no, if we're going to use it, we must give it to you before the hearing starts. That's what they say at 8160. How does that affect the current issue? The FOIA issue strikes me as a different issue. If they're going to use it, apparently the assessment is very valuable. They say maybe we're going to use this. It's a very valuable document. Well, then their argument is, oh, we can't disclose it because we have to protect the asylum officer. Then they're throwing that argument out the window. That should tell the court that the reasons that they're giving, oh, we must protect the asylum officer, is not real. Well, that's the generic reason why there's a deliberative process. I don't think that an agency has to come in case after case and show the connection in the individual case between, say, some memo that's prepared by a staff lawyer and the ultimate decision in a particular case. Rather, the deliberative process privilege is justified based on its overall objectives and how it generally applies. And then once you know that, the two requirements are just pre-decisional and deliberative in a particular case. Well, I would agree with you in general, Your Honor. However, in this case, it is no longer pre-decisional. After the supervisor initialed it, it is elevated. It becomes the final decision. But the initialing of it is itself a decision, is the final decision, right? Indeed. And the initials go on the three-page assessment. Indeed, the DHS ---- Because some agencies will have all these memos, just drawing on experience, will have all sorts of memos packed into a packet, and then the final decision maker will do a one-line, approved, disapproved. So the only final decision is the one sentence or one-line document so that all the other memos don't get disclosed. That strikes me as similar, and that's always been done, I think, to protect the confidentiality of the underlying documents. It strikes me as similar to what this is, your initials here. The final decision maker is different from the assessment. Well, to some extent. However, the assessment itself is a live document that they want to use. Right. Basically, they agree with me at A268. They say the assessment is prepared by the asylum officer and becomes the final decision of the agency when the assessment is approved by the supervisor. That's what they say at A268. The judge disagreed and said, oh, the referral notice is the final decision. It is also true that the DHS says, oops, another document is the final decision, the referral notice. DHS is inconsistent in their own briefs. By the way, the referral notice is not the final decision. It is a worthless piece of paper. It's found at A207. It says, we deny your case because of inconsistency, singular, and in parentheses, inconsistencies, plural. So is it one inconsistency or more than one? Between your testimony and or, what does that mean, and or? Other evidence. What is the other evidence? The referral notice is an irritating thing to give to somebody. What does it do? It doesn't tell us anything. It is annoying that the asylum officer is allowed to use sources outside the record and put them in the assessment and then not tell the applicant about it. I complained about that in my brief. But if it's used, maybe I'm wrong about this, but I want to ask this. If the assessment is used in the proceeding for the immigration court, it will be disclosed to you. If it's not used, it won't be disclosed. That's fair. Okay. The question is. That's fair or that's correct? It's a fair statement of what they do in immigration court. Yes. It's fair and unfair to the applicant. In the middle of the hearings, here comes a document that has who knows what's inside. All right. I thought your point in part was going to be that on the record that we have before us, it is unclear. Maybe you don't want to make this argument. It is unclear whether the assessment is the final decision of the agency. I understand your argument about the agency views it as an important document. But is it pre-decisional or not? And the agency, just to finish my thought here, the agency has the burden here to show it's entitled to this exemption. And it may well be, but the question is whether on the record we have, we can determine when the final decision, what is the document that is the final decision by the agency? And we have at least three different proposals here. Well, we have the assessment. We have the referral notice. We have the initialing. Well, the initials go on the assessment. Well, is the assessment the final decision? Is the initial assessment the final decision? Is the notice to refer the final decision? And at least cases from the Supreme Court and this court have focused on the importance of knowing what is the role of the document in the agency's decision-making process for purposes of determining whether or not it is pre-decisional. And that's really the issue here, isn't it? What is the role of this assessment? In other words, there's a citation to the agency manual that talks about, the supervisor is supposed to check it for errors of law but give substantial deference. And if you don't agree, you're supposed to chat with the asylum officer about it and see if you can reach agreement. And if you can't reach agreement, you buck it on up to the director or deputy director, who may send it further over to the research department. So, I guess my question is, can we tell? Is the final decision about denying asylum, was that made by the asylum officer in the assessment? Was it made at the point the supervisor determined that the asylum officer's assessment was okay? Or was the decision not made until we have what you call this useless document, this referral? I would suggest that the asylum officer's first assessment is that Mr. Abtu loses. And then when the supervisor acquiesces in that, if he does acquiesce, then that is elevated and it becomes the final decision. Then it goes to the immigration court, right? Correct. And that's now... So at the initialing, your argument is it ceases to be pre-decisional. Indeed. And... Exactly. And the importance of the assessment is demonstrated by the fact that they really want to use it and they don't want to give it to me. That proves how valuable it is. Even if it's final or not, it's a very valuable document. Well, I can see a distinction between a document that the government thinks is important for making its case and a document that memorializes a final decision regarding why it's taking the position that the application should be denied. Well, those are differences, Your Honor. I would suggest that most of the time when they're used in immigration court, it's because it's allegedly a prior inconsistent statement. You told the asylum officer X, now you're telling us something different. I'm somewhat surprised the government lawyer says, oh, we don't use it for those purposes. Well, what other purpose is it being used for? If there's something in the assessment that is not factual from the applicant, then my goodness, that raises even more due process concerns. The asylum officer had a private conversation with the dictator of Ethiopia and gets information, and he puts that in the assessment? And then I'm supposed to fight against that in immigration court? That'd be very unfair. How reliable is this other information that the asylum officer relies upon? I complained about that. I said asylum officers can use sources not available to the applicant. And then in response, the DHS said at A-165, you can submit a FOIA request seeking the material relied upon by the officer. They tell us, and the HCFR 208.12 says, there's no discovery in immigration court. Go do a FOIA. Okay, now we're doing the FOIA. Now, they have the document. Why are they making me make applications to faraway places? The Dent case in the Ninth Circuit said it is Kafkaesque for the court to treat applicants this way. And the Third Circuit in the Toti May case said the same thing. You have the documents right here. You're telling the guy, go over there and make requests and have big, long delays. For what purpose? That interferes with the effective administration of the immigration courts. It's a big waste of time. Why does the government do that to us? It's unfair that the government would treat asylum applicants this way. Well, why don't we hear from counsel for the government, and then we'll give you some time for rebuttal. Thank you. May it please the Court. My name is Peter Mayer, Counsel for the United States Government here at the Department of Health and Human Services. The chief question that this case presents is whether the assessment to refer the disputed document in this case is covered by Exemption 5. And that, in turn, depends on whether the document is privileged. And the privilege that applies is the deliberative process privilege. In order for a document to come within the deliberative process privilege, it must be pre-decisional and it must be delivered. I don't think that there's any question that at the time the assessment to refer is created, that it is pre-decisional. What's the final decision? The final decision is not the assessment to refer. It's the notice of referral. Let me refer the Court to page 183 of the joint appendix. Oh, hold on a second. That's the declaration of the agency, Jill Eggleston. Yes, and her statements are not necessarily dispositive here, as I see. What did you say, 183? Yes, ma'am. Okay. Let me refer the Court to the top of the page. Right. The first full sentence. Right. Which is, I think, the fourth line. Right. It reads as follows. The assessment to refer serves as a basis for using SCIS's final decision as reflected in the referral notice, which is provided to the applicant. The agency's final decision is the referral notice, which is signed by the SAO, the supervisory asylum officer, or the director of the asylum office. So the relationship of the two pieces of paper, I think, is pretty clear. The assessment to refer, which is the subject of this case, is the document that serves as the basis for a second document. The notice of referral, which appears at page 207 of this joint appendix. So the second document is just a computer printout. Well, not necessarily. Well, you check boxes. Take a look at that, if you will, Judge Waters. You'll find that at page 207. Yeah, I did. Okay. Now, that document has, at the middle of the page, an explanation for the agency's decision to deny asylum. After careful consideration of all available information and explanations at your asylum interview, your claims denied is not credible on the basis of material inconsistencies between your testimony and an application and or other evidence, material inconsistencies within your testimony, lack of detail on material reports. And all that is what? Set out in the assessment? It may or may not be set out in the assessment. The important thing, Judge Waters, is the assessment is a recommendatory document. I know you say that, but how do we know that? Well, there are other documents that I think. She doesn't say that. Mrs. Eggleston. In other words, our court has said that Exemption 5 is supposed to be very narrowly construed, and there are certain things that the agency has to demonstrate, and we have several different views in these papers before us as to when the agency has made its final decision. For example, if I'm the asylum officer and I say deny the application, you look at it, you check it, it goes on, and this referral notice is given. All right? If the process shows that yours is just a ministerial checking of the box, checking of the assessment, the decision has been made by the asylum officer that this should be denied. On the other hand, maybe the process is that I give you my assessment, and you look it over, and while it may be legally sufficient, you disagree with the conclusion, in which case there may be some back and forth between us, or if we can't agree, according to the manual, you may refer it up to the director or deputy director. He or she, in turn, may refer it on. So is that terribly clear to be where this decision has been made? Well, I think it is fairly clear from the application and for the process that it is the supervisory asylum officer who is making the decision. And how do we know that? Well, it says so in the portion of the declaration that we were discussing. Suppose all the supervisory officer does is put it in a manila envelope marked referral. It's still the supervisory official's decision, Judge Rogers. Let me call your attention to the sentence that preceded the one we were discussing a moment ago, because I think it also answers the relationship between the assessment to review and the notice of referral. That's the first sentence on 23, and it reads as follows. And the reason for the decisions to refer. That's what I'm focusing on. Well, in this case, the assessment refers prepared by the asylum officer in narrative form and explains the officer's concern, discusses possible legal insufficiencies in the application, and the reasons for the decision to refer the case to the immigration court. So that says to me the asylum officer's report is a decision. No, he's reporting. And the next sentence says, well, it's the basis for the final decision. It is, but let me point out one thing that came to mind as you were explaining the options that the supervisory asylum officer has. One option you gave was that he can approve, he can check, he can send it off. Another is that you could disapprove and there are further conversations. This is according to the agency manual. Right. But there's a third, and that is that the supervisory asylum officer agrees with the bottom line, but he may not agree with everything in the recommendations of the asylum officer. Right. And that possibility, it seems to me, illustrates, one, that the assessment to refer cannot be the final decision because the supervisory official may make his decision based on slightly different factors. He may agree with the ultimate decision, but he may reject some of the things that his subordinate put in that memorandum. How often is it he just approves? There's nothing in the record about that, Judge Gabbard. See, and this very statement you and I are looking at in line 151 says the reasons for the decision. But Judge Rogers, that's a reference, it seems to me, to what's going on in the prior line. It explains the officer's concerns, the writer of that document. Right. And the reason I think that's important to what we're discussing, the deliberative process privilege, is because it reflects the fact that the asylum officer is making his own views known to his superior, which may reflect his own views about the consistency of the testimony, the credibility of the applicant. Those are all the kinds of things that normally you would want to have a free give and take between the subordinate and the higher official. That's the very kind of dialogue that the deliberative process privilege is designed to have. And what do you do with that last clause? I'm sorry, Judge Rogers. Line 151 and the reasons for the decision to refer? That's right. It can be the reasons that the asylum officer believes are the basis for denying asylum. But it doesn't say can be. No, it doesn't. But here the declarant is describing what these documents are in general, and she's doing so in support of the general proposition that these are the kind of documents that affect agency decision-making. And the law and deliberative process, both within FOIA and outside FOIA, is pretty clear that the reason we have this privilege is to make sure that subordinates and superiors can have a frank discussion about government policy and not all of that discussion will necessarily be made public. And even if the final decision, I think is your theory, is a rubber stamp, the memo that is essentially rubber stamped is still pre-decisional. Absolutely. That's our position, Judge Gavino. You took my characterization and ran with it. Okay, good. Well, I'm not saying that it always is, but even if it were. No, I know. If the plaintiff were right, there would be no reason to have this second document, the one to 207, the notice of referral. Right. But the fact that the agency does it this way is because it wants to make sure that there is a process in place whereby this candid discussion can occur. So there are three steps. There's the asylum officer who talks to the applicant. There's the supervisor. And then there's a notice to refer. Well, as Judge Gavino's remarks pointed out, these are all preliminary steps, too. This is all reviewed de novo. That's the final decision. They're reviewed de novo in the immigration court. It's not even a matter of reviewing this decision. The agency then has to show the basis for denying asylum. So until it's introduced in this immigration court proceedings, there is no final decision by the agency? No, there's a final decision. But I'm just saying that the final decision is preliminary and it doesn't have legal effect. It doesn't result in a denial of asylum. It's really the equivalent of a charging document. That's right. I've been indicted by the grand jury. All right. Well, for purposes of the discussion here, the final decision for purposes of FOIA is, in fact, the notice of referral, which is a 207. We can see that. But I'm talking about the real impact upon the applicant. Well, that's what he's talking about, too. I mean, he's saying a lot of these things turn on credibility, et cetera. And, you know, you get to court and all of a sudden you see this document that says, you know, I referred to something that happened on Monday when, in fact, it really happened on a Wednesday. And so the asylum officer didn't think I was credible. You know, or it's a much more complicated problem. And all I'm trying to understand is you're saying that the notice to refer, or the notice of referral, is the agency's final decision that, and could you finish my sentence? That the matter must go to an immigration court to determine whether asylum will be granted. For purposes of FOIA law, it's the final decision, and therefore it is not subject to deliberative process privilege. And how could it be? It's the document that's sent to the asylum applicant. Let me turn just briefly. Can I just ask a quick question? If the notice, if the assessment is that the application should be granted, what happens? I believe, I'm not certain of the process, but I believe there is then some notice sent to the asylum applicant in the sense, good news, you're an asylum applicant. Based only on the asylum officer's assessment? No, it's obviously going to be passed on by the supervisory asylum officer. You say it's obvious. Well, I don't believe the asylum officer has that authority, Judge Rodgers. I understand you don't believe it, and you may well be correct, but I'm just trying to find out what's in the record here. If, in fact, the asylum officer's recommendation to grant is what gets the person asylum, then clearly that is a final decision of some type. If, on the other hand, it has to go to a supervisor, and maybe the supervisor doesn't have authority to grant either, but it has to go to a director or deputy director. But this only deals with the denial part, and I just thought that the granting part might give some insight as to this assessment. I don't think there's anything in the Eggleston Declaration about that, Judge Rodgers, and that makes perfect sense that this is a denial case. Let me turn briefly to this. But she's supposed to be describing the general process. That's true, but the general process as it relates to assessments to refer, which are normally a predicate document for a recommendation of non-asylum. Let me talk briefly about the statutory argument. One point is that the plaintiff continually in his argument suggests that we know that these documents are valuable and reliable because we want to present them in each case, but we don't. It's up to the agency whether it wants to present this as evidence, and it may or may not. When it does so, obviously it's a document that has to be presented to the applicant in connection with the hearing. Why would it not be used in the proceeding? Because the agency may rely on other evidence other than the assessment to refer as the basis for denying asylum. And there's something problematic in the assessment to refer from the agency's perspective of denying asylum. Could be. I mean, that's not a great answer, but that's probably the correct answer. If there weren't the possibility of give and take that might reveal something that's sensitive to the agency, it wouldn't be a point to the deliberative process privilege, and the agency wouldn't assert it. But let me turn, so let me just say to confirm the point, we don't. We don't introduce them in every case. And the fact that we do in some and don't in others in no way suggests that they're reliable or unreliable. It shows that when we weigh the balance in a particular case, the assessment may be valuable enough for the proceeding that we want to introduce it and are willing to weigh the deliberative process privilege that would otherwise apply. The only other point that I want to make relates to the nature of the production that the statute contemplates. And here it's worth pointing out, this is a statutory provision that Congress has written. Congress has decided what the asylum applicant is going to get and when he's going to get it. And the provision at issue 1229A4B reads as follows. The alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the government. That sounds like a trial-type right. It doesn't sound like pretrial discovery. And I think it has been written that way because it is drafted so as to ensure the rights of the asylum applicant at trial to examine this evidence or any other evidence that can be used against him. But it's not designed as pretrial discovery that would be available whether or not even the case goes forward. Here this is producible if and only if the case actually goes forward and the government decides to introduce it as evidence. Otherwise, it remains subject to deliberative process privilege. If there are no further questions, we're prepared to submit the case for the Court's disposition. Thank you. All right. Counsel for time. Counsel is suggesting that if the hearing starts at 9 o'clock in Immigration Court, at 1035, they can put the assessment into evidence. That's what he's suggesting. That's very unfair. If any privilege the government says that it has must be used only in a fair way. Isn't the solution to that for the Immigration Court to require earlier disclosure? That would be great. The Immigration Courts don't do it. They say there's no discovery. I understand. I'm just saying the remedy you're seeking here, and I understand your concern and sympathize with it, but seems a mismatch for the issue that you're most concerned about. Well, we would hope there would be more remedies at the Immigration Court, but they say do a FOIA. I understand. I understand. I would suggest that the United States versus Julian is a case to be considered, 1988. Mr. Julian was a convicted criminal. The probation officer has a pre-sentence report, and it's going to the judge. He says, Mr. Julian says, maybe there's mistakes in it. I want to read it beforehand. The government said you can't have it. It's privileged. The Supreme Court said another statute says you get it. 18 United States Code 4208 says you can read these pre-sentence reports. So they gave it to him. Chief Justice Rehnquist said Congress did not intend a privilege in this case. Well, isn't that case perfect, right, for us? Okay, there's a privilege, except 1229A says you get this kind of evidence. So, therefore, Congress did not intend it. When you're in court. In Julian, he was in court, about to be sentenced. Mr. Aptu is in court. His hearing is scheduled next year. He's in court. Ah, so let me just be clear. It's scheduled for 2016. The hearing, the trial, you're telling us is scheduled for 2016. Actually, a master hearing is scheduled for June 2016. A master hearing is a one-minute adventure where the court says, what do you want? And we say we want an individual hearing of three hours, and they'll probably give us 2017, 2018. So two-hour evidentiary hearing. That's the future, Mr. Aptu. And your client remains in the country at large, right? Indeed. Indeed. He wants to win asylum so he can petition for his wife to come over. And I suggest something else about 1229A. It has three parts to it. You have the right to examine evidence against him. That would be the assessment. He has the right to present evidence on his own behalf. Maybe there's something in the assessment that's useful to the applicant. Because asylum officers do research that helps applicants at times. We'd like to see what's in there. Maybe there's something in there that helps the applicant. So we want to get it. And 1229A, he has the right to cross-examine witnesses presented by the government. Okay, well, what if the asylum officer is a witness? Then what do we do? Well, how do I cross-examine the asylum officer without the assessment? So 1229A should be construed broadly in consideration of all the facts. We want fairness to the applicants. The privilege should be construed narrowly.  This privilege is interfering with the truth, and it's very unfair to the asylum applicant. Thank you. We will take your case under advisement.
judges: Rogers, Brown, Kavanaugh